Wolstenholme, Inc., Appellant, *v.* Jos. Randall & Bro., Inc.

132

Argued November 30, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Joseph R. Embery,* of *Embery, Outterson & Fuges,* for appellant.—The averments in the affidavit of defense do not support the counterclaim: Vendig v. Union League, 291 Pa. 236.

Claim of Oak Worsted Mills was too remote to be used as a counterclaim: Iron Trade Products Co. v. Wilkoff Co., 272 Pa. 172; Griffin v. Metal P. Co., 264 Pa. 254.

Claim of Oak Worsted Mills could not be used as a counterclaim because of no notice given by defendant to plaintiff of any breach of warranty: Wright v. Leather Co., 257 Pa. 552; Wright v. Carbonic Co., 271 Pa. 332.

*Roland C. Heisler,* with him *Philip Wallis* and *Dickson, Beitler & McCouch,* for appellee.—Defendant was entitled to set off its liability to Oak Worsted Mills resulting from plaintiff's breach of warranty: Raby v. Ward-Meehan Co., 261 Pa. 468.

Defendant was entitled to credit for the two lots in dispute which were returned to plaintiff: Honesdale Ice Co. v. Imp. Co., 232 Pa. 293; Bulliett v. Trust Co., 284 Pa. 561; Farr v. Zeno, 81 Pa. Superior Ct. 509.

OPINION BY MR. JUSTICE SCHAFFER, January 7, 1929:

This action was brought to recover the purchase price of a material known as "artificial silk carded" sold and delivered by plaintiff to defendant. There is no dispute about the amount of material bought and the price. Plaintiff claims $8,350.14. Defendant denies any indebtedness, counterclaiming for $14,969.73, alleging that the material was sold with an express warranty by plaintiff that it would be of uniform quality and of the same uniform quality as that furnished on a previous order, which warranty was breached, with resultant damage to the concern to which defendant sold the yarn which if manufactured therefrom and for which its vendee has asserted a demand against defendant in the amount of the counterclaim. In addition, defendant sets up as a defense to a portion of plaintiff's demand that it had returned part of the merchandise sold and delivered amounting in value to $2,002.08, for which, although plaintiff has refused to accept it, defendant should not be required to pay. The verdict was for defendant generally with no certificate, however, in its favor. Plaintiff, who appeals, does not ask for a new trial, only that judgment shall be entered in its favor notwithstanding

the verdict, asserting that the defense interposed to its claim is legally unavailing.

We are of the opinion that the testimony establishes that there was a warranty by plaintiff of the commodity sold, as above recited. The problem then arises whether defendant can counterclaim damages asserted by its vendee to whom it sold the yarn manufactured from the silk which plaintiff had furnished to it.

Plaintiff urges as the reasons why defendant cannot maintain its counterclaim: (1) That the averments in the affidavit of defense do not support it (Practice Act of May 14, 1915, P. L. 483; Vendig v. Union League of Phila., 291 Pa. 536); (2) The claim of the Oak Worsted Mills, defendant's vendee, is too remote and is unsupported by testimony of special circumstances within section 69 of the Sales Act; (3) The claim of the Worsted Mills did not result from defective goods sold by plaintiff to defendant and there was no breach of warranty; (4) There was no notice given by defendant to plaintiff of any breach.

A reading of the affidavit of defense leads us to the conclusion that it will support the counterclaim. It avers the warranty as recited and that the silk was purchased by defendant for the purpose of being spun into yarn which was to be used by defendant's vendee in making cloth with a silky finish or lustre and that such purpose was known to plaintiff at the time the agreement for its sale was made.

Appellant's second position that the damage claim of the Oak Worsted Mills is too remote to be asserted as a counterclaim and is unsupported by testimony of special circumstances, cannot we think be successfully maintained. There was testimony from which the jury could conclude that the silk was sold by plaintiff to defendant under the express warranty that all of it would be of the same uniform quality as that delivered under a prior order, which had been used to manufacture yarn that defendant had sold to the Oak Worsted Mills, which the

latter had satisfactorily used in the making of its particular kind of cloth and that defendant had passed on to its customer, the Worsted Mills, the warranty of the material given to it. Defendant spun a special batch of yarn out of the material delivered to it earlier in July and furnished it to the Oak Worsted Mills, which made from it a satisfactory piece of cloth. This led to the order for the material here in question. The difference in quality of the material which plaintiff delivered caused the Oak Worsted Mills to make an inferior grade of goods which it was compelled to sell at a lower price. "One who warrants goods to possess a certain quality is held to an extensive liability for consequential damages for breach of the warranty": Williston on Contracts, vol. 3, p. 2472; Williston on Sales, vol. 2, p. 1541, section 614; Griffin v. Metal Product Co., 264 Pa. 254. "Where goods are sold with a warranty to a dealer it must be assumed that the dealer may resell them with a similar warranty to a subpurchaser. Accordingly if this is done and the subpurchaser recovers damages from the original buyer, the latter has a prima facie right to recover these damages against the seller who originally sold him the goods. And even though the original buyer has not yet been held liable to his subvendee, the amount of his probable liability may be recovered from the original seller": Williston on Contracts, vol. 3, p. 2416, section 1355; Williston on Sales, vol. 2, p. 1438, section 599a; Buckbee v. Hohenadel, 224 Fed. 14; Lissberger v. Kellogg, 78 N. J. L. 85, 73 Atl. 67; Hubbard Steel Foundry Co. v. Federal Bridge, etc., Co., 169 Wis. 277, 171 N. W. 949. Appellant argues that the material was sold under a well-known trade name and that under section 15 (4) of the Sales Act "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." The commodity here sold, "artificial silk carded," is not an article sold under a trade name in the sense that the words "trade

name" are used in the act. "Artificial silk carded" is simply artificial silk waste which has been submitted to the process of carding and any silk waste which had been so treated would be so designated. It could no more be said to be a trade name than the designation of the raw material as "waste" could be. In any case, the provision as to articles sold under a trade name does not apply where there is an express warranty. It is also argued by appellant that from the testimony it appears that appellee did not rely upon its, appellant's, judgment as to the fitness of the material for the contemplated use, but upon the expert knowledge of its own president. We are not satisfied from the reading of the evidence that this is correct and believe that the other conclusion may be properly reached, particularly as the defects were discoverable only by microscopic examination; the question was for the jury to whose determination it was submitted.

Section 69 of the Sales Act of 1915 (P. L. p. 563), after stating the measure of damages for breach of warranty to be the loss directly and naturally resulting therefrom, provides: "In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." Appellant contends that no special circumstances existed which justify making the claim of the Oak Worsted Mills against defendant the subject of a counterclaim by it, citing Raby, Inc., v. Ward-Meehan Co., 261 Pa. 468, for the proposition that damages resulting from particular circumstances connected with the transaction cannot be recovered unless such circumstances were known to the defaulting party to the contract and were such as may be supposed to have entered into the contemplation of the parties; appellant argues that there is nothing in the case which makes the contract between

defendant and the Oak Worsted Mills a part of the contract which it had with plaintiff. Appellee contends that special circumstances are present which show proximate damage of a greater amount than covered by the general rule stated in the quoted 69th section of the Sales Act; that these special circumstances are that when the contract was made plaintiff knew of the purpose for which the silk was being purchased and of the requirements of defendant's customer and was expressly informed that a variation in quality or grade would result in serious damage to the finished cloth. The president of defendant testified that he warned plaintiff "particularly that any variation in quality or grade of the artificial silk would be a very serious thing, not only that the quality of the goods would be deficient but so much yarn would be made and accumulated in the weaving plant and in goods unfinished before the final results were gotten." He further stated that the silk was to be an exact duplication of the first order, saying "It had to be because our customer was impressing on me the absolute necessity of uniformity in quality and grade and the conversations which my customer had with me I passed on in full to Mr. Murdock [plaintiff's representative] and Murdock knew exactly the demands made on me; before I made any warranties to my customer I got the warranty from Mr. Murdock." This we think fulfilled the requirement as to special circumstances. Where such are known to the defaulting party to a contract and may be supposed to have entered into the contemplation of the parties as they may be here, then damages growing out of such circumstances may be awarded for the contract's breach: Raby, Inc., v. Ward-Meehan Co., 261 Pa. 468. What is meant by the phrase "special circumstances" as used in the Sales Act is that the buyer has communicated to the seller at the time of entering into the contract sufficient facts to make it apparent that the damage subsequently claimed was within the reasonable contemplation of the parties.

As to appellant's third contention that the claim of the Oak Worsted Mills on defendant did not result from defects in plaintiff's goods and hence no breach of warranty on plaintiff's part was shown, it is sufficient to say without elaborately reviewing the testimony on this point, some of it technical in character, that the defects in the material sold and in the cloth made from it were due to the coarse and uneven fibres which it contained; these were latent defects. This question was for the jury to whom the trial judge fairly submitted it.

Appellant's fourth position is that the demand of the Worsted Mills on defendant cannot be asserted as a counterclaim because no notice was given to plaintiff of any breach of warranty. Section 49 of the Sales Act provides: "But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor." It is urged in this connection that the only thing communicated to plaintiff was some complaints made to defendant by the Worsted Company and that these did not amount to notice of a breach of warranty. Appellee answers this contention by pointing out that the lack of uniformity in the artificial silk was not discoverable until the cloth, into the manufacture of which it went, was completed and that as soon as the defects were discovered notice was given. It took about two weeks to finish the cloth. The order for the artificial silk in question was given on July 30th and on August 10th defendant wrote plaintiff stating that it had a notice from its customer who was using the yarn made from plaintiff's artificial silk that there was a difference in it which showed defects in his cloth: "We find the 2000 lbs. you delivered on 8/5/25 is not the same stock as the previous deliveries and would like you to examine this at our mill. I warned Mr. Murdock continually that this stock must be uniform and that any variation would be sure to cause trouble." The

testimony shows that following receipt of this letter a representative of plaintiff went with one of defendant's employees to the Oak Worsted Mills in an endeavor to determine the cause of the defective cloth. We conclude that there was sufficient evidence of timely notice.

Appellant urged that defendant was not entitled to a deduction of $2,002.08 for goods offered to be returned to plaintiff, the return of which it refused to accept. This question would seem not to be in the case in view of the verdict and appellant's attitude before us. Although defendant's counterclaim was much in excess of plaintiff's demand, leaving entirely out of consideration the claim for the goods offered to be returned, the jury did not award a certificate in defendant's favor, but simply found a general verdict for defendant. Whether they took into account and made deduction of the item we are now considering or wiped out plaintiff's demand with the counterclaim cannot be determined, and unless a new trial were granted, which appellant does not ask, it is not manifest how appellant could be helped so far as this item is concerned. We could not enter judgment in appellant's favor for the value of the particular goods involved in this branch of the case because sufficient of the counterclaim may have been allowed by the jury to have wiped it out.

After a careful reading of the entire record we reach the conclusion that it presents no reversible error.

The judgment is affirmed.