447 A.2d 958

GEN. DYNAFAB, INC.

v.

CHELSEA INDUSTRIES, INC., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 9, 1980.

Filed May 14, 1982.

Reargument Denied Aug. 2, 1982.

Petition for Allowance of Appeal Denied Sept. 16, 1982.

Howard D. Scher, Philadelphia, for appellant.

Anthony E. Creato, Philadelphia, for appellee.

Before BROSKY, WATKINS and MONTGOMERY, JJ.

PER CURIAM:

The appellant, Chelsea Industries, Inc. (Chelsea), questions the propriety of the trial court's decision to grant a motion for a new trial limited to damages where the issue of damages is inextricably intertwined with that of liability and where the damages, lost future profits, are speculative. We are satisfied that the trial court acted correctly and accordingly affirm the decision of the trial court.

Chelsea and appellee, General Dynafab, Inc. (Dynafab), entered an agreement wherein Chelsea would manufacture and sell products produced by a process called "Fiberweld Process" which had been developed by Dynafab. Chelsea was to produce the product at its Jersey Laminating and Finishing Company in Roselle, New Jersey, where it owned a plant and machinery which were required for use in the "Fiberweld Process." The agreement provided that Dynafab would deliver materials and equipment to Chelsea's plant and that Chelsea would modify its machinery in order to produce the product.

The record discloses that shortly after the agreement was executed, Dynafab was locked out of Chelsea's plant. This rendered it impossible for Dynafab to participate in the agreement in which it had contracted for various commissions and other payments. Dynafab then sued Chelsea, claiming Chelsea had breached the contract. A jury awarded Dynafab $215,000 in damages. Chelsea moved for a judgment n. o. v. or new trial and to mold the verdict. Dynafab moved for a new trial limited only to the issue of damages. Dynafab's motion was granted. Chelsea's motions were denied. This appeal followed.

Chelsea argues that the issue of damages herein is so inextricably intertwined with the issue of liability that at a new trial both issues must be considered. In *Gudat v. Heuberger*, 275 Pa.Super. 535, 542–543, 419 A.2d 30, 33–34 (1980), we said:

The question remains, however, whether the new trial should be limited to the issue of damages. This court will grant a new trial limited to damages where the issue of liability has been fairly determined and the issue of damages is readily separable from the issue of liability. See *Lininger v. Kromer*, 238 Pa.Super. 259, 358 A.2d 89 (1976). In cases involving inadequate verdicts, however, we are reluctant to grant new trials limited to the issue of damages and will consider the issue of liability to have been fairly determined only where it is "uncontested," "clear" or "free from doubt." *Gagliano v. Ditzler*, 437 Pa.

230, 263 A.2d 319 (1970). The reason for our reluctance is the possibility that the inadequate verdict may in fact have been a compromise verdict reflecting an agreement among the jurors to lessen the plaintiff's award because of evidence that he contributed to the injury. See *Lambert v. PBI Industries*, 244 Pa.Super. 118, 366 A.2d 944 (1976). Chelsea contends that the damages awarded below resulted from a compromise verdict.

The jury found for Dynafab in the amount of $215,600, representing $61,600 per year lost profits for 3½ years. The record indicates that the anticipated duration of the contract was not precisely specified therein. Apparently, however, the parties envisioned a contract lasting up to 10. The 3½ year determination was based entirely upon the jury's will. Chelsea contends that this is not a case where an inadequate verdict indicates a compromise, rather, they assert that the trial court erred in its instructions as to damages and that that error resulted in an inadequate verdict. In other words, the jury's verdict resulted in a clear statement concerning liability, based upon sufficient evidence, however, an inadequate verdict arose from the improper instructions the court gave the jury concerning damages.

The court essentially instructed the jury that it could find Chelsea liable for up to $61,600 lost profits per year, for a reasonable number of years. In ordering a new trial limited to damages the court conceded that this instruction and an alternate instruction it gave, were improper.[1] Clearly, the parties agree, including the trial judge, that the damages' instruction was improper. Chelsea remonstrates that the jury found the maximum amount permitted by the court, $215,600. Thus, Chelsea would have us believe either that the court stated in its instructions that the jury could find damages in the form of lost profits of $61,600 per year for a

1. Instructions were provided the jury under which it could calculate damages based upon the formulai established in the contract for the value of equipment and raw materials plus six percent interest from the date of the breach. Under this instruction, Dynafab could not recover its lost profits. The jury elected to follow the lost profits instruction.

reasonable number of years up to and not exceeding 3½ years or that the number of years for which damages could be adjudged represented a separate and distinct judgment as to liability alone.

■ The record demonstrates that the 3½ year determination was made in accordance with the court's instructions that the jury reach a conclusion as to the reasonable duration of the contract. The jury was restricted only in that if it chose to use the lost profits mode of determining damages it could only find that for each year in which liability existed that $61,600 in damages could be assessed. Under these circumstances, we find that the issue of liability was "uncontested" "clear" or "free from doubt." The jury, were it to find lost profits, was obliged to find a set amount per year and was only free to vary its verdict according to the number of years it considered "reasonable." Thus, it is apparent, that there is a substantial likelihood that while disagreement may have existed as to the amount of damages, no disagreement existed concerning the issue of Chelsea's liability.

Next, Chelsea asserts that lost profits may not be used as a measure of damages where, as here, a new business with no record of prior profitability exists. Decisions of this court and of our Supreme Court have suggested that damages for lost profits of a new business are too speculative. *Exton Drive-In v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319 (1979), cert. den. 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *Pines Plaza Bowling Inc. v. Rossview Inc.*, 394 Pa. 124, 145 A.2d 672 (1958); *Pollock v. Morelli*, 245 Pa.Super. 388, 369 A.2d 458 (1976). Nevertheless, our courts have held that damages may be assessed for loss of profit where such a loss was reasonably foreseeable to the parties at the time that the contract was entered and where those damages are capable of proof of reasonable certainty. *Taylor v. Kaufhold*, 368 Pa. 538, 84 A.2d 347 (1951); *Mellon Bank, N. A. v. Aetna Business Credit Inc.*, 500 F.Supp. 1312 (W.D.Pa.1980); Restatement, Contracts, § 331 (1932).

■ While it is arguable here that Dynafab was a newcomer to the business herein, nevertheless, unlike the plaintiffs in *Exton Drive-In*, supra, *Pines Bowling, Inc.*, supra, and *Pollock*, supra, Dynafab was able to show that there was significant interest in their product before the contract breach occurred. The record demonstrates that Dynafab had commitments for orders from four sources. That Dynafab could demonstrate a sales record of Fiberweld Products during the previous 1½ years. Evidence was submitted also concerning the projected sales, raw material needs and profitability of the Chelsea plant at Jersey Laminating and Finishing Company. Clearly, this evidence is not entirely of an unspeculative nature, however, we believe that if the jury believed it, it could come to a reasonable determination as to damages resulting from loss of future profits. Thus, we hold that the evidence should be submitted to the jury for it to decide its weight in the assessment of damages. See *Kasemier v. National Fuel Gas Distribution Corporation*, 279 Pa.Super. 334, 341 n. 1, 421 A.2d 226, 230 n.1 (SPAETH, J. DISSENTING, 1980).

Accordingly, we affirm the lower court's order.